UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK ANTHONY CHRISTIANS, | 4:22-CV-04072-LLP |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |
| NANCY CHRISTENSEN, Retired Unit Manager at Mike Durfee State Prison, Individual and Official Capacity; LAURIE STRATMAN, Unit Coordinator at Mike Durfee State Prison, Individual and Official Capacity; DARIN YOUNG, Terminated Warden at SDSP, Individual Capacity; JESSICA COOK, Associate Warden at SDSP, Individual and Official Capacity; DEREK EKEREN, Unit Manager at Jameson, Individual and Official Capacity; JENNIFER DRIESKE, Terminated Deputy Warden at SDSP, Individual Capacity; ANGELA PECHOUS, Unit Coordinator at Jameson, Individual and Official Capacity; SETH HUGHES, Unit Manager at Jameson, Individual and Official Capacity; GENIE BIRCH, Unit Manager at Jameson, Individual and Official Capacity; GREASEMAN, CO at Jameson, Individual and Official Capacity; BARNETCHE, CO at Jameson, Individual and Official Capacity; MARJAMA, CO at Jameson, Individual and Official Capacity; WINTERS, CO at Jameson, Individual and Official Capacity; MULLINS, CO at Jameson, Individual and Official Capacity; HULSCHER, CO at Jameson, Individual and Official Capacity; DAWN ALUMBAUGH, CO at Jameson, Individual and Official Capacity; LIEUTENANT BECKER, LT. at Jameson, Individual and Official Capacity; LIEUTENANT HETTIG, LT. at Jameson, Individual and Official Capacity; FORMER LT. PERRET, LT. at Jameson, Individual and Official Capacity; BETH, Summit Supervisor at Jameson, Individual and Official Capacity; | |

1

| | |
|---|---|
| SUMMIT FOOD SERVICE, Food Provider at Jameson, Individual and Official Capacity; CATHY WYNIA, Special Security at SDSP, Individual and Official Capacity, DAN SULLIVAN, Official Capacity,<br><br>          Defendants. | |

Plaintiff, Mark Anthony Christians, an inmate at the South Dakota State Penitentiary, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. He filed a motion to proceed in forma pauperis and provided his prisoner trust account. Docs. 2 and 4. This order shall address Christians' motion to proceed in forma pauperis as well as an initial screening of his complaint.

### MOTION TO PROCEED IN FORMA PAUPERIS

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The Court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A)   the average monthly deposits to the prisoner's account; or
(B)   the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Christians filed a motion to proceed in forma pauperis. Doc. 2. His prisoner trust account report shows his average monthly deposits to be $161.08 and his average monthly balance as $228.99. Doc. 4 at 1. Based on this information, the Court grants Christians leave to proceed in forma

pauperis. Christians' initial filing fee would be $45.80, which is 20 percent of his average monthly balance for the past six months ($228.99), but he has already paid a filing fee of $350. Thus, Christians is granted leave to proceed in forma pauperis to the extent that he does not owe the $52 administrative fee, and his full fee is now paid.

## FACTUAL BACKGROUND

Christians claims that several officials at the Mike Durfee State Prison (MDSP) and the South Dakota State Penitentiary (SDSP) have retaliated against him for filing grievances and for his ongoing lawsuit against MDSP and SDSP officials. Doc. 1 at 6; *see Christians v. Young*, 4:20-CV-04083-LLP. He claims that Nancy Christensen threatened to kill him by poisoning his coffee or powdered milk if he filed any more grievances regarding food. Doc. 1 at 6. He claims that Christensen also falsely wrote him up for assault. *Id.* at 7. Christians alleges that Laurie Stratman said she would find a way to get rid of him if he didn't stop filing food grievances. *Id.* at 6. He alleges that Darin Young[1] and Jessica Cook told him that he was charged with an H-7 disciplinary report because he was filing too many grievances regarding food and therefore had to be involved with the subject of the disciplinary report. *Id.* He also alleges that Cathy Wynia wrote the disciplinary report and had no evidence other than that Christians had filed grievances and a lawsuit regarding prison food. *Id.* at 7.

Christians alleges that Derek Ekeren threw away his job application because he filed a grievance against Ekeren and told him that he would not get a job because of his filing of

---

[1] Christians brings claims against Darin Young, the former South Dakota State Penitentiary Warden, in his individual and official capacity. Doc. 1 at 2. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." The current SDSP Warden is Dan Sullivan, who is automatically substituted for Young on Christians' official capacity claims.

grievances. *Id.* at 6. He alleges that he could have gotten "a minimum wage job making $15.00 an hour or more[.]" *Id.* He also alleges that Cook told him she would make sure he never gets a job because he filed too many grievances. *Id.* at 7. Christians states that Ekeren choked him with both hands in Ekeren's office after he filed grievances, causing him to lose consciousness. *Id.* at 6. He states that Ekeren then threatened to kill him if he filed another grievance. *Id.* at 7. Christians claims that Jennifer Drieske,[2] Young, and Seth Hughes all told him he would be transferred to a more dangerous prison if he didn't stop filing grievances regarding food. *Id.*

Christians states that he did not receive an impartial hearing when he was written up for assault. *Id.* He states that he pleaded not guilty and asked for a hearing regarding his H-7 write-up, but he was not granted one. He states that Ditminson, an SDSP official not named as a defendant, let him out of segregated housing and told him the write-up would be dismissed. *Id.* He also states that he later learned he was classified as guilty for the H-7 violation. *Id.* Christians claims that these various forms of retaliation caused him to be afraid for his life. *Id.* at 6.

Christians claims that he lost 21 pounds in 14 days while in segregated housing because he did not receive complete meals. *Id.* at 8. He claims that he complained to Griesman,[3] Angela Pechous, Genie Berch, Barnetche, Marjama, Winters, Mullins, Hulscher, and several other officers regarding nutrition in segregated housing and that he sent kites to the Summit kitchen supervisor. *Id.* He also claims that he spoke with Hughes about this issue several times and filed

---

[2] Christians brings claims against Jennifer Drieske, a former deputy warden at SDSP, in her individual and official capacity. Doc. 1 at 3. Under Rule 25(b), Drieske's successor is automatically substituted for Christians' official capacity claims. But Christians does not identify Drieske's successor, and his official capacity claims against other defendants remain to provide injunctive relief. Thus, Christians' claims against Drieske in her official capacity are dismissed.
[3] Christians refers to this defendant as "Greaseman" in the defendants section of his complaint and as "Griesman" in his alleged facts. *See* Doc. 1 at 3, 8.

grievances, but nothing was done. *Id.* Christians alleges that nutritional deprivation caused him hunger pains, loss of sleep, mental anguish, weakness, fatigue, and muscle atrophy. *Id.*

Christians brings claims for violation of his First, Eighth, and Fourteenth Amendment rights. *Id.* at 6, 8. He sues all defendants in their individual and official capacities other than Young and Drieske, who he sues in their individual capacities, and Dan Sullivan, who he sues in his official capacity. *See id.* at 2-4. Christians asks for termination of the involved employees, a public apology, and for the alleged nutrition issues to be fixed. *Id.* at 10. He also asks for a job making at least minimum wage, which he believes he should have had for the last three years. *Id.* He asks for other unspecified "injunctive and declaratory relief[.]" *Id.* He also seeks $150,000 in compensatory damages and $100,000 in punitive damages. *Id.*

## LEGAL BACKGROUND

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663-64 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be

5

enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553-63)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

## DISCUSSION

### I. Christians' Ongoing Lawsuit

Christians has a pending lawsuit against many of the same defendants in which he brings claims for insufficient nutrition and for retaliation for the filing of grievances. *See Christians*, 4:20-CV-04083-LLP, Doc. 147 (ruling on various motions in that case). On September 28, 2022, this Court granted in part Christians' second motion to amend his complaint. *Id.* In his second amended complaint, Christians brought claims against Griesman, Pechous, Alumbaugh, Berch, Barnetche, Marjama, Winters, Mullins, Hulscher, Becker, Perret, several other SDSP officials, Beth, and Summit Food Service for inadequate nutrition in violation of his Eighth Amendment rights. *See id.* at 51-53. He also brought First Amendment retaliation claims against Young, Christensen, and Stratman. *See id.* at 54-57.

The Eighth Circuit Court of Appeals has recognized that one of the "prudential limits upon the exercise of the [federal court] jurisdiction bestowed by Congress" is "the principle that federal courts may decline to exercise their jurisdiction in order to prevent duplicative litigation."

*Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952 (8th Cir. 2001);

*see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As

between federal district courts, however, though no precise rule has evolved, the general

principle is to avoid duplicative litigation."). In *Prudential Health Care Plan*, the Eastern District

of Missouri denied the State of Missouri's motion to remand the case back to state court after

Prudential removed it to federal court. *See* 259 F.3d at 951. The district court then granted

Prudential's motion to dismiss for failure to state a claim, dismissing the case without prejudice.

*Id.* The State of Missouri then appealed the dismissal, not on the grounds of the pleading defects

identified by the district court, but only as to the district court's refusal to remand to state court.

*Id.* At the same time, the State of Missouri "ameliorated the apparent defects in the initial

complaint" and filed a new action in state court, which Prudential then removed to federal court.

*Id.* at 952. The Eighth Circuit dismissed the State of Missouri's appeal in order to prevent

duplicative litigation and concluded that "[p]laintiffs may not pursue multiple federal suits

against the same party involving the same controversy at the same time." *Id.* at 954, 956 (citing

*Colo. River*, 424 U.S. at 817).

Importantly, the Eighth Circuit applied this principal even though the precise issue before

it, whether the district court properly denied the State of Missouri's motion to remand to state

court, differed from the substantive breach of contract and fraud claims raised in the State of

Missouri's second complaint. *See id.* at 951-54; *see also Walton v. Eaton Corp.*, 563 F.2d 66, 70

(3d Cir. 1977) (en banc) (finding that the plaintiff "had no right to maintain two separate actions

involving the same subject matter at the same time in the same court and against the same

defendant" (citations omitted)). Thus, this Court will screen and dismiss Christians' claims that

involve the same subject matter and the same defendants as his ongoing lawsuit.

7

## A. Retaliation and Excessive Force Claims

Christians alleges that MDSP and SDSP officials have retaliated against him for his filing

of grievances and a lawsuit and that Ekeren assaulted him. Doc. 1 at 6-7. In his second amended

complaint in his ongoing lawsuit, Christians claimed that Young threatened to transfer him to a

more dangerous prison and that Christensen and Stratman stole his paperwork and falsely

claimed that he assaulted them and organized a hunger strike.[4] *Christians*, 4:20-CV-04083-LLP,

Doc. 147 at 55. Thus, Christians' claims that Young retaliated against him by threatening to

transfer him and that Christensen and Stratman retaliated against him by filing a false assault

charge and a false H-7 charge against him are dismissed without prejudice under 28 U.S.C. §§

1915(e)(2)(B)(ii) and 1915A(b)(1). Christians' remaining retaliation and excessive force claims

will be screened under § 1915A.

## B. Due Process Claims

Christians alleges that he was denied a prison job, that he was falsely accused of assault,

that he did not receive "a fair, impartial hearing" for the assault write-up, and that he was not

granted a disciplinary hearing for his H-7 charge. Doc. 1 at 6-7. Construing his complaint

liberally, Christians brings claims for violation of his Fourteenth Amendment due process rights

against Ekeren and Cook for denying him a prison job and against Christensen, Stratman, and

Wynia for false disciplinary charges and his disciplinary hearing issues. *See id.* These claims are

brought against Ekeren, Cook, Christensen, Stratman, and Wynia in their individual and official

---

[4] Christians' filings in his ongoing lawsuit allege an H-7 disciplinary charge for organizing a
hunger strike. *See Christians*, 4:20-CV-04083-LLP, Doc. 83 ¶ 141. This Court construes
Christians' references in this case to an H-7 disciplinary charge to be his H-7 charge for
organizing a hunger strike, even though Christians does not specify the cause of his H-7 charge
in the present lawsuit. *See* Doc. 1 at 6-7.

capacities. See *id.* at 2-4. This Court also construes these claims as being brought against Sullivan, the current SDSP Warden, in his official capacity.

Christians has not brought claims regarding a prison job in his ongoing lawsuit. *See Christians*, 4:20-CV-04083-LLP, Doc. 147 at 21-48, 51-57. Thus, this Court will screen his Fourteenth Amendment due process claim regarding denial of a prison job against Ekeren, Cook, and Sullivan below.

Christians has brought First Amendment retaliation claims against Christensen and Stratman regarding his disciplinary charges in his ongoing lawsuit. *Id.* at 55. Although he has not brought Fourteenth Amendment due process claims against Christian and Stratman regarding his disciplinary charges in that case, Christians must bring all claims involving the same controversy against those defendants in the same lawsuit under *Prudential Health Care Plan*. *See* 259 F.3d at 954. Thus, these claims should have been brought in Christians' ongoing lawsuit. Christians' Fourteenth Amendment due process claims against Christensen and Stratman regarding disciplinary charges are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). His disciplinary charge claims against Wynia and Sullivan will be screened below.

### C. Nutrition Claims

Christians alleges that he was not provided adequate nutrition while in segregated housing at SDSP and that SDSP officials failed to remedy this issue after he raised it. Doc. 1 at 8. In his second amended complaint, Christians brought this same claim against the same set of defendants named in his present complaint. *See Christians*, 4:20-CV-04083-LLP, Doc. 147 at 51-53. Thus, it is a duplicative claim. Christians' inadequate nutrition claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### II. Official Capacity Claims for Money Damages

Christians has sued all defendants in their individual and official capacities. Doc. 1 at 2-4. All defendants were employees of the State of South Dakota at the time of the incident in question. *Id.* As the United States Supreme Court has stated, "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *See id.* But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan*, 555 U.S. 223, 242-243 (2009) (citation omitted). Here, Christians seeks both money damages and injunctive relief. Doc. 1 at 10. Claims against defendants in their official capacities for money damages are the equivalent of claims for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity to allow Christians' official capacity claims for money damages. Thus, defendants are protected against official capacity claims for money damages, and Christians' official capacity claims for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### III. Official Capacity Claims for Injunctive Relief and Individual Capacity Claims

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Christians' individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### A. Remaining First Amendment Retaliation Claims

Christians brings new First Amendment retaliation claims not alleged in his ongoing lawsuit against Christensen, Stratman, Cook, Wynia, Ekeren, and Hughes in their individual and official capacities and against Young and Drieske in their individual capacities. *See* Doc. 1 at 2-4, 6-7. Specifically, he alleges that Christensen threatened to kill him, that Stratman said she would find a way to get rid of him, that Young and Cook told him he was charged with an H-7 disciplinary report because he filed too many grievances, that Wynia wrote a false H-7 disciplinary report against him, that Ekeren prevented him from getting a prison job, assaulted him, and threatened to kill him, that Cook told him he would not be able to get a job, and that Drieske and Hughes threatened to transfer him to a more dangerous prison. *Id.* at 6-7. He alleges that all of these actions were done in retaliation for his filing of grievances and his prison lawsuit. *Id.* In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

11

Christians alleges that he was retaliated against for filing grievances regarding food and for filing a lawsuit. Doc. 1 at 6-7. Thus, taking his allegations as true, Christians clearly satisfies the first prong of a First Amendment retaliation claim because "[t]he filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

For Christians to satisfy the second prong of a First Amendment retaliation claim, he must demonstrate both that defendants took an adverse action toward him and that the alleged adverse action "would chill a person of ordinary firmness from continuing in the activity[.]" *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876); *see also Lewis*, 486 F.3d at 1029 (holding in a First Amendment retaliation claim that the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013) (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003)). This is an objective test that looks at whether a reasonable prisoner's actions would be chilled by an official's alleged adverse actions. *See id.* (citing *Garcia*, 348 F.3d at 729).

Here, Christians has alleged sufficient facts to show that a prisoner of ordinary firmness would have been "chilled" from using the grievance procedure and asserting an inmate lawsuit. Although some of Christians' claims may not allege standalone constitutional violations, the Eighth Circuit has an established rule that "an act in retaliation for the exercise of a constitutionally protected right is actionable under [§] 1983 even if the act, when taken for a different reason, would have been proper." *See Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th

12

Cir. 1990) (quoting *Freeman v. Blair*, 793 F.2d 166, 178 (8th Cir. 1986), *vacated on other grounds*, 483 U.S. 1014 (1987)). Thus, this Court cannot say that the alleged acts of retaliation were insufficient to chill a prisoner of ordinary firmness.

To satisfy the third prong, Christians must show that "the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer*, 738 F.3d at 911 (quoting *Revels*, 382 F.3d at 876). Christians alleges sufficient facts to meet the third prong because he alleges that defendants retaliated against him for filing grievances and a prison lawsuit. Doc. 1 at 6-7. Thus, Christians' First Amendment retaliation claims against Christensen, Stratman, Cook, Wynia, Ekeren, and Hughes in their individual capacities and in their official capacities for injunctive relief and against Young and Drieske in their individual capacities survive § 1915A screening.

### B. Excessive Force Claim

Christians alleges that Ekeren choked him to the point of losing consciousness. *Id.* at 6-7. Construing his complaint liberally, he brings an Eighth Amendment excessive force claim against Ekeren in his individual and official capacity. *See id.* The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In considering an Eighth Amendment claim for excessive force, the "core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson*, 503 U.S. at 7). In evaluating whether force was applied reasonably and in good faith, "courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the

13

responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted." *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam).

Here, Christians alleges facts sufficient to state an Eighth Amendment excessive force claim against Ekeren. He alleges that Ekeren choked him in Ekeren's office after he filed grievances. Doc. 1 at 6. Although Christians does not provide any information as to what occurred between him and Ekeren leading up to the alleged choking, he does not allege circumstances that would have required any need for force. *See id.* Thus, this Court cannot say that the force allegedly used by Ekeren was reasonable and in good faith under *Walker*. *See* 526 F.3d at 1188. Christians' Eighth Amendment excessive force claim against Ekeren in his individual capacity and in his official capacity for injunctive relief survives § 1915A screening.

### C. Due Process Claims

Construing his complaint liberally, Christians brings Fourteenth Amendment due process claims against Ekeren, Cook, and Wynia in their individual capacities and in their official capacities for injunctive relief and against Sullivan in his official capacity for injunctive relief. *See* Doc. 1 at 2-3, 6-7. Specifically, he alleges that Ekeren and Cook have denied him a prison job and that Wynia wrote a false disciplinary report against him. *Id.* at 6-7.

### 1. Prison Employment Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). But "[i]nmates have no constitutional entitlement to tenure in prison jobs." *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984) (per

14

curiam) (citation omitted). "Whatever liberty or property interests inhere in prison employment are the product of state law." *Id.* (citing *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir. 1981); *see also I.S.B. v. State of S.D. Comm'r of Admin.*, 2011 WL 1316594, at *9 (D.S.D. Apr. 1, 2011) ("[A] property interest in prison employment, and in the compensation derived from it, can only be created by state law." (citing *Lyon*, 727 F.2d at 769)). A property interest in prison employment is only created when state law uses "language of an unmistakably mandatory character[.]" *Lyon*, 727 F.2d at 769 (quotation omitted).

Here, Christians fails to state a claim for violation of his Fourteenth Amendment due process rights regarding prison employment. Because Christians has no constitutional right to prison employment, he must identify state law that creates a property interest in prison employment through the use of "language of an unmistakably mandatory character" under *Lyon*. *See id.* (quotation omitted). Christians identifies no such statute, and the South Dakota statute governing compensation for inmate labor uses permissive, not mandatory, language. *See* Doc. 1 at 6-7; SDCL § 24-4-9 ("The warden *may* authorize monetary compensation to inmates for work performed under the provisions of [the South Dakota statute authorizing inmate labor]." (emphasis added)). Thus, Christians' Fourteenth Amendment due process claim regarding prison employment against Ekeren and Cook in their individual capacities and in their official capacities for injunctive relief and against Sullivan in his official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 2. Disciplinary Report Claims

"Once a liberty interest is established, the next question is what process is due." *Smith*, 954 F.3d at 1079 (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). This question need only be answered if the inmate can establish a constitutionally

15

protected liberty interest. *Id.* (citing *Wilkinson*, 545 U.S. at 221). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* (quoting *Wilkinson*, 545 U.S. at 221). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). But "inmates possess a state-created liberty interest in avoiding assignment to conditions of confinement that 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Smith*, 954 F.3d at 1080 (alteration in original) (quoting *Wilkinson*, 545 U.S. at 223).

The Eighth Circuit has explained that there is no "established 'baseline from which to measure what is atypical and significant in any particular prison system[.]' " *Smith*, 954 F.3d at 1081 (quoting *Wilkinson*, 545 U.S. at 223). But the Eighth Circuit has "affirmatively held what does *not* constitute an atypical or significant deprivation." *Id.* For instance, "a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 1082 (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)). An inmate "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id.* (quoting *Phillips*, 320 F.3d at 847); *see also Kennedy v. Blankenship*, 100 F.3d 640, 642-43 (8th Cir. 1996) (collecting post-*Sandin* cases in which deprivations were upheld as not atypical and significant hardships).

Christians makes no allegations regarding the punishment he received for his assault charge. *See* Doc. 1 at 7. Thus, he makes no showing of the difference between his conditions following discipline for the assault charge and the conditions in the general population. *See Smith*, 954 F.3d at 1082 (citing *Phillips*, 320 F.3d at 847). Christians must show an atypical and significant hardship imposed by the disciplinary conditions in order to have a liberty interest in

16

avoiding those conditions, and he fails to make such a showing regarding his assault charge. *See id.* at 1080 (citing *Wilkinson*, 545 U.S. at 223). Christians' Fourteenth Amendment due process claim regarding his disciplinary charge for assault against Wynia in her individual capacity and her official capacity for injunctive relief and against Sullivan in his official capacity for injunctive relief is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

Christians' complaint suggests that he was placed in segregated housing as punishment for his H-7 disciplinary charge. *See* Doc. 1 at 7. Under *Smith*, a demotion to segregation alone, even without cause, is not the atypical and significant hardship that invokes procedural due process protections. *See* 954 F.3d at 1082 (citing *Phillips*, 320 F.3d at 847). But Christians also alleges that the nutrition in segregated housing was insufficient. Doc. 1 at 8. Although Christians' disciplinary conditions likely fit into the category of cases cited by the Eighth Circuit in *Kennedy* as deprivations that were not atypical and significant hardships, *see* 100 F.3d at 642-643, this determination relies on a comparison of Christians' post-discipline conditions and the conditions of the SDSP general population, which requires facts not currently before the Court. *See Smith*, 954 F.3d at 1082 (citing *Phillips*, 320 F.3d at 847). Thus, this Court cannot say with certainty at this early phase of litigation that Christians' post-discipline conditions were not an atypical and significant hardship, and the Court will assume that Christians had a liberty interest in avoiding his post-discipline conditions of confinement for purposes of screening.

"[C]laims based on the falsity of the charges . . . , standing alone, do not state constitutional claims." *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *see also Dixon*, 38 F.3d at 379 ("[T]he filing of a false disciplinary charge is not itself actionable under § 1983[.]" (citing *Sprouse*, 870 F.2d at 452)). A prisoner can bring a claim if a liberty interest

exists and the necessary procedural protections are not provided. *See Wilkinson*, 545 U.S. at 228-29. Those protections require a prisoner be provided notice of the charges, an opportunity to be heard, and a written statement of the evidence relied upon

Christians claims that Wynia filed a false disciplinary charge against him that was unsupported by evidence and that he never received a hearing regarding that charge. Doc. 1 at 6-7. But a false disciplinary charge alone does not state a claim for a procedural due process violation, even when an inmate is ultimately found guilty of and disciplined for the charge. *See Sprouse*, 870 F.2d at 451-52. The Eighth Circuit has explained that the process due for a prison disciplinary hearing in which a prisoner has a liberty interest is "advance notice of the violation, an opportunity to be heard, and a written statement of the evidence relied on and the reasons for the disciplinary action." *See Holt v. Caspari*, 961 F.2d 1370, 1372 (8th Cir. 1992) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). A disciplinary decision must also be supported by "some evidence." *See id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### a. Sufficiency of Opportunity to be Heard

Christians must be afforded an opportunity to be heard regarding prison discipline that implicates a liberty interest and thus invokes the due process protections of the Fourteenth Amendment. *See id.* (citing *Wolff*, 418 U.S. 539). Christians alleges that he asked for a hearing and was never provided one. Doc. 1 at 7. He alleges that instead, he was let out of segregated housing and told that his disciplinary charge would be dismissed, but that he was later classified as guilty of the charge. *Id.* Thus, he alleges that he was not provided an opportunity to be heard.

Under *Parrish*, Christians much allege that each individual defendant either directly participated in the constitutional violation or caused it through a failure to train or supervise the offending actor. *See* 594 F.3d at 1001. Christians does not allege that Wynia was involved with

18

his lack of an opportunity to be heard regarding this disciplinary charge, only that Wynia wrote a disciplinary report that lacked evidence. *See id.* Thus, Christians' Fourteenth Amendment due process claim for insufficient opportunity to be heard regarding his H-7 charge against Wynia in her individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2), and his Fourteenth Amendment due process claim for insufficient opportunity to be heard regarding his H-7 charge against Wynia and Sullivan in their official capacities for injunctive relief survives § 1915A screening.

As discussed above, the due process protections regarding an opportunity to be heard only apply if Christians has a liberty interest in avoiding his post-discipline conditions of confinement. *See Smith*, 954 F.3d at 1079 (citing *Wilkinson*, 545 U.S. at 221). Christians has a liberty interest in avoiding disciplinary conditions of confinement when he can show "some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *See id.* at 1082 (quoting *Phillips*, 320 F.3d at 847). Only after establishing a liberty interest does the Court turn to the question of what process is due. *Id.* at 1079 (citing *Williams*, 277 F. App'x at 649); *Wilkinson*, 545 U.S. at 224. Thus, although Christians' Fourteenth Amendment due process claim for insufficient opportunity to be heard regarding his H-7 charge survives screening, he will have to establish both that his post-discipline conditions of confinement constituted an atypical and significant hardship such that he had a liberty interest in avoiding them and that he was not provided an adequate opportunity to be heard in order to prevail on this claim.

### b. Sufficiency of Evidence

A disciplinary decision must be supported by "some evidence." *See Caspari*, 951 F.2d at 1372 (quoting *Hill*, 472 U.S. at 455). "[T]he 'relevant question is whether there is any evidence

in the record that *could support* the conclusion reached by the disciplinary board.' " *Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986) (quoting *Hill*, 472 U.S. at 455-56 (emphasis added)). But prison officials need not provide all relevant evidence. *See Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir. 1988) (explaining that "prison officials were justified in withholding information about confidential informants because of the risk of revealing their identities"); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (per curiam) (finding that drug test results do not need to be included in the written notice for a drug infraction and that prison officials are not required to provide a copy of drug test results to the inmate at the disciplinary hearing (citing *Harrison v. Dahm*, 911 F.2d 37, 41 (8th Cir. 1990))).

Christians claims that his due process rights have been violated because there was not sufficient evidence to support the finding that he organized or participated in a hunger strike. *See* Doc. 1 at 7. He alleges that the only evidence against him is that he had filed grievances and a lawsuit regarding prison food. *Id.* Thus, he alleges that there is no evidence that he committed the infraction for which he was written up and found guilty, only evidence that it is the sort of infraction that he might commit. *See id.*

In *Frey*, the Eighth Circuit found that a disciplinary charge for inciting a prison riot was supported by some evidence when a joint memorandum written by prison officers identified the plaintiff and five others as the source of the verbal statement that started the riot. 807 F.2d at 1409 n.2, 1414-15. The dissent in *Frey* argued that this was "guilt by association" because the joint memorandum did not identify which inmate made the statement in question. *Id.* at 1415 (Bright, J., dissenting). But the majority found that the "some evidence" standard could be met by considering other evidence besides the joint memorandum, and even if the joint memorandum

were the only piece of evidence, it would meet the low bar set by the "some evidence" standard. *See id.* at 1414 (majority opinion) (citing *Hill*, 472 U.S. at 455-56).

Here, Christians alleges that there is no evidence that he organized or participated in the hunger strike, only that SDSP officials suspected him of doing so. *See* Doc. 1 at 7. Thus, as alleged, his claim meets even the low bar set by the "some evidence" standard under *Frey*. *See* 807 F.2d at 1414 (citing *Hill*, 472 U.S. at 455-56). Unlike in *Frey*, where the plaintiff disputed whether a piece of evidence sufficiently implicated his involvement in the alleged infraction, Christians alleges that no such evidence exists. *See id.*; Doc. 1 at 7. Christians also alleges that Wynia directly participated by writing the disciplinary report that charged him with the infraction. Doc. 1 at 7. Thus, Christians' Fourteenth Amendment due process claim for insufficient evidence regarding his H-7 charge against Wynia in her individual capacity and in her official capacity for injunctive relief and against Sullivan in his official capacity for injunctive relief survives § 1915A screening.

Again, this Court assumes that Christians has a liberty interest in avoiding his post-discipline conditions of confinement for purposes of screening. Christians will have to establish both that his post-discipline conditions of confinement following his H-7 charge constituted an atypical and significant hardship such that he had a liberty interest in avoiding them and that the evidence against him was insufficient to support a finding of guilt in order to prevail on this claim.

Accordingly, it is ORDERED:

1. That Christians' motion to proceed in forma pauperis (Doc. 2) is granted. Because Christians has made a $350 payment and because he does not owe the $52 administrative fee, Christians' filing fee is fully paid.

2.  That Christians' claims against all defendants in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

3.  That Christians' First Amendment retaliation claims against Young for threatening to transfer him and against Christensen and Stratman for filing a false assault charge and a false H-7 charge against him are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.  That Christians' remaining First Amendment retaliation claims against Christensen, Stratman, Cook, Wynia, Ekeren, and Hughes in their individual capacities and in their official capacities for injunctive relief and against Young and Drieske in their individual capacities survive § 1915A screening.

5.  That Christians' Eighth Amendment excessive force claim against Ekeren in his individual capacity and in his official capacity for injunctive relief survives § 1915A screening.

6.  That Christians' Fourteenth Amendment due process claim for insufficient opportunity to be heard regarding his H-7 charge against Wynia and Sullivan in their official capacities for injunctive relief survives § 1915A screening.

7.  That Christians' Fourteenth Amendment due process claim for insufficient evidence regarding his H-7 charge against Wynia in her individual capacity and in her official capacity for injunctive relief and against Sullivan in his official capacity for injunctive relief survives § 1915A screening.

8.  That all of Christians' remaining claims against all defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

22

9.  The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Christians so that he may cause the complaint to be served upon defendants Christensen, Stratman, Young, Cook, Wynia, Ekeren, Drieske, Hughes, and Sullivan.

10. Christians shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

11. The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Doc. 1) and this order, upon the defendants.

12. Defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

13. The Clerk of Court is directed to send a copy of this order to the appropriate official at Christians' institution.

14. Christians will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED November **22**, 2022.

BY THE COURT:

ATTEST:
MATTHEW W. THELEN, CLERK

Lawrence L. Piersol
United States District Judge

23