UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK ANTHONY CHRISTIANS, | 4:22-CV-04072-LLP |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RULING ON PLAINTIFF'S MISCELLANEOUS MOTIONS |
| NANCY CHRISTENSEN, Retired Unit Manager at Mike Durfee State Prison, Individual Capacity; LAURIE STRATMAN, Unit Coordinator at Mike Durfee State Prison, Individual and Official Capacity; DARIN YOUNG, Terminated Warden at SDSP, Individual Capacity; JESSICA COOK, Associate Warden at SDSP, Individual Capacity; DEREK EKEREN, Unit Manager at Jameson, Individual and Official Capacity; JENNIFER DRIESKE, Terminated Deputy Warden at SDSP, Individual Capacity; SETH HUGHES, Unit Manager at Jameson, Individual and Official Capacity; CATHY WYNIA, Special Security at SDSP, Individual and Official Capacity; AMBER PIRRAGLIA,[1] Official Capacity, and RICHARD JOHNSTON, Official Capacity. | |
| Defendants. | |

Plaintiff, Mark Anthony Christians, an inmate in the custody of the South Dakota

Department of Corrections, filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. When

---

[1] In his complaint, Christians asserted claims against Darin Young, the former South Dakota State Penitentiary Warden, in his official capacity. *See* Doc. 5 at 3. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Amber Pirraglia, who is the acting Warden at the SDSP, is automatically substituted for Young on Christians' official capacity claims.

Christians commenced this action, he was incarcerated at the South Dakota State Penitentiary (SDSP). Doc. 1. Christians has been transferred and is now incarcerated at Mike Durfee State Prison (MDSP). Doc. 88. Pending before the Court is Defendants' motion for summary judgment. Doc. 29. Christians opposes this motion. Docs. 48, 49, 50, 51, 52, 53, 54, 71, 74. Christians has filed various motions, including motions seeking to re-open discovery, motions for preliminary injunctive relief, and a motion to add next of kin. Docs. 26, 44, 59, 60, 65, 66, 69, 70, 73, 80, 81, 90. The Court now considers these motions.

I.    **Christians' Motion to Keep Eighth Amendment Violation Claims Against Christensen and Young (Doc. 26)**

Christians requests that the Court amend its § 1915A screening order to provide that his Eighth Amendment claims against Christensen and Young arising from alleged death threats survive. Doc. 26. Christians alleges that Nancy Christensen told him she would kill him if he filed any more grievances. Doc. 1 at 6. He contends that Young stated that he would be transferred to a prison where he would be killed over food. *Id.* at 7. Defendants argue that Christians' motion should be denied as untimely. Doc. 27. This Court agrees.

Federal Rule of Civil Procedure 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party . . . from a[n] . . . order[] . . . for the following reasons: . . . mistake, inadvertence, surprise, or excusable neglect[.]" The Court analyzed Christians' allegations against Christensen and Young and concluded that he had adequately pleaded a claim for First Amendment retaliation. Doc. 5 at 11–13, 22. Christians requests that the Court amend the screening order to include an Eighth Amendment claim against Christensen and Young that Christians contends the Court "inadvertently leftout but was claimed in the complaint." Doc. 26 at 1 (capitalization in original omitted). His motion is appropriately construed as a request for relief under Rule 60(b)(1).

2

A motion seeking relief under Rule 60(b)(1) must be made no longer than a year after entry of the order. Fed. R. Civ. P. 60(c)(1); *see also* Fed. R. Civ. P. 6(b)(2) (stating that a court must not extend the time to act under Rule 60(b)). Christians' motion is dated February 24, 2024, and was filed on March 7, 2024. Doc. 26. The Court's screening order was filed on November 23, 2022. Doc. 5. Thus, Christians' motion to amend the screening order to keep Eighth Amendment violation claims against Christensen and Young, Doc. 26, is denied as untimely.

## II.    Defendants' Motion for Summary Judgment (Doc. 29)

Defendants move for summary judgment. Doc. 29. Defendants argue that all of Christians' claims should be dismissed because he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA). Doc. 30 at 7–11. In the alternative, Defendants argue that each of Christians' claims should be dismissed on the merits. *Id.* at 7–8, 11–29.

### A.    Factual Background

#### 1.    First Amendment Retaliation Claims

Christians' First Amendment retaliation claims against Christensen, Stratman, Cook, Wynia, Ekeren, and Hughes in their individual capacities and in their official capacities for injunctive relief only and against Young and Dreiske in their individual capacities survived § 1915A screening. Doc. 5 at 11–13, 22. At all relevant times, Nancy Christensen was employed at MDSP as a unit manager until her retirement on May 22, 2020. Doc. 31 ¶ 1; Doc. 38 ¶ 2; Doc. 50 ¶ 1. Christians alleges that sometime between July 2019 and September 2019, Christensen told him that "she would kill [him] if [he] filed any more food grievances because [he] was

making her life difficult and it would be easier to get rid of [him]." Doc. 1[2] at 6 (capitalization in original omitted); Doc. 51 at 2. According to Christians, Christensen stated she would put poison in his coffee or powdered milk and that she knew where he kept them in his room. Doc. 1 at 6. During the same time period, Christians contends that Laurie Stratman said "she would find a way to get rid of [him] if [he] didn't stop filing grievances on the food." *Id.* (capitalization in original omitted); Doc. 51 at 2. Laurie Stratman is a unit manager employed at MDSP. Doc. 31 ¶ 2; Doc. 50 ¶ 2. Christensen and Stratman deny threatening Christians. Doc. 37 ¶ 3; Doc. 38 ¶ 3. It is undisputed that Christians did not file a grievance reporting that Christensen and Stratman had threatened him. Doc. 31 ¶¶ 34, 36; Doc. 50 ¶¶ 34, 36. In his complaint, Christians alleges that he did not exhaust his administrative remedies because he "was threatened with many forms of violence and retaliation and was scared for [his] life." Doc. 1 at 6. According to Christians' declaration, "within about a week of their threats[,]" he verbally informed a lieutenant at MDSP of the alleged retaliation, and the lieutenant "said [his] options were to file a formal grievance on the staff members but warned the retaliation would get worse or . . . he said [he] could just leave it alone." Doc. 51 at 2 (capitalization in original omitted).

In April 2020, some inmates in the Jameson Annex of the SDSP refused to eat scheduled meals and participated in a hunger strike to protest prison kitchen and food issues. Doc. 31 ¶ 9; Doc. 50 ¶ 9. Cathy Wynia, a Lieutenant with the Special Investigations Unit at the SDSP, investigated the April 2020 hunger strike. Doc. 31 ¶ 5; Doc. 40 ¶ 4; Doc. 50 ¶¶ 5, 9. Wynia

---

[2] Christians' complaint is signed and dated under "penalty of perjury." Doc. 1 at 10. "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint, 28 U.S.C. § 1746." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001) (internal citation omitted); *see also id.* at 995 ("[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion.").

interviewed inmates, spoke with prison staff, obtained information from confidential informants, and reviewed surveillance footage. Doc. 40 ¶ 4. On April 24, 2020, at the conclusion of her investigation, Wynia charged Christians with an H-7 offense for "[e]ngaging in, or encouraging, a riot, work stoppage, group demonstration or group food/hunger strike[.]" Doc. 40-2. Wynia interviewed Christians, and he denied organizing or planning the hunger strike. Doc. 31 ¶ 12; Doc. 40-1 at 5. Christians alleges that Wynia issued a false H-7 charge as retaliation for filing grievances and a lawsuit. Doc. 1 at 6. Although Christians filed a grievance on February 25, 2021, requesting removal of the H-7 disciplinary report, in the grievance, Christians did not assert that the H-7 charge was falsified in retaliation for filing grievances and a lawsuit. Doc. 41-3 at 1–2.

After the H-7 charge was issued, Christians contends that Darin Young, who was the Warden of the SDSP, and Jessica Cook, who was an Associate Warden at the SDSP, told him that he "was charged because [he] was filing too many grievances on the food and [he] had to be involved." Doc. 1 at 6 (capitalization in original omitted); Doc. 31 ¶¶ 3, 4; Doc. 50 ¶¶ 3, 4. It is undisputed that neither Young nor Cook were involved in the investigation that led to the H-7 charge or the disciplinary process following the charge. Doc. 31 ¶¶ 37, 39; Doc. 50 ¶¶ 37, 39. It is also undisputed that Christians did not file a grievance alleging that Young or Cook had retaliated against him through the H-7 offense for filing grievances or a lawsuit. Doc. 31 ¶¶ 38, 40; Doc. 50 ¶¶ 38, 40.

Christians asserts that Darek Ekeren[3], a unit manager at the SDSP, prevented him from getting a prison job, assaulted him, and threatened to kill him in retaliation for filing grievances and a lawsuit. Doc. 1 at 6–7; Doc. 31 ¶ 6; Doc. 34 ¶ 2; Doc. 50 ¶ 6. Specifically, Christians

---

[3] Ekeren's first name is misspelled in the caption. Doc. 29 at 1 n.1.

alleges that in November 2019[4] Ekeren stated that he had thrown away instead of turning in Christians' job application to work at P.I. "due to the filing of grievances and his handling of them." Doc. 51 at 4; Doc. 1 at 6 ("Derek Ekeren said he threw away my job application because I filed a grievance on him[.]" (capitalization in original omitted)).

Christians alleges that he suffered an injury due the negligence of transport officers. Doc. 51 at 2. In early March 2021, Christians was in Ekeren's office to submit a grievance regarding the injury he alleges he sustained because of the officer's negligence as well as a letter to the Attorney General and the Commissioner of Administration. *Id.* Christians alleges that Ekeren turned red in the face, became increasingly angry, and then lunged at him, choking him with both hands and causing Christians to lose consciousness.[5] Doc. 1 at 6; Doc. 51 at 3. Christians also alleges that Ekeren told him that he would kill him or have him killed if he tried to file another grievance. Doc. 1 at 7; Doc. 51 at 3. Ekeren denies choking or threatening to kill Christians. Doc. 34 ¶¶ 3, 4. Christians did not file a grievance related to his allegation Ekeren choked and threatened to kill him. Doc. 31 ¶ 42.

Christians alleges that Cook and Ekeren stated that they "would make sure that [Christians] never get a job at P.I. because [he had] filed too many grievances." Doc. 1 at 6–7. In early 2021, Christians inquired about obtaining a job at Pheasantland Industries. Doc. 31 ¶ 27; Doc. 50 ¶ 27. At the time, Christians was classified as "high risk inmate" under the DOC's inmate work assignment risk assessment program based on the April 2020 H-7 offense. Doc. 31

---

[4] Christians alleges that Ekeren twice prevented him from getting a job at P.I. because he had filed grievances: once in November 2019 and a second time in the second or third week of March 2021. Doc. 1 at 6; Doc. 49 at 3; Doc. 50 ¶ 47; Doc. 51 at 2, 4.

[5] Based on the allegations regarding the March 2021 incident, Christians' Eighth Amendment excessive force claim against Ekeren in his individual capacity and in his official capacity for injunctive relief only survived § 1915A screening. Doc. 5 at 13–14, 22.

¶ 28; Doc. 50 ¶ 28. Cook and Ekeren determined that Christians was not eligible for a PI job due to the inmate work assignment metric. Doc. 33 ¶ 6; Doc. 34 ¶ 7. Christians alleges that he advised prison officials, including Ekeren and Cook, that the job he was seeking was classified as a medium risk job and that he was eligible to work at P.I. according to DOC policy regardless of his risk status. Doc. 51 at 2. All the prison officials except Cook and Ekeren, according to Christians, told him that they would look into his claims. *Id.* Christians contends that Ekeren and Cook "said they would make sure [he] did not get a P.I. job due to [his] grievances and amount of complaints." *Id.* Cook and Ekeren deny stating to Christians that they would make sure he never got a job at P.I. Doc. 33 ¶ 8; Doc. 34 ¶ 8. Christians did not file a grievance alleging that Cook and Ekeren told Christians that they would make sure he never got a job at P.I. Doc. 41 ¶¶ 14, 18.

Jennifer Dreiske[6] was employed at the SDSP until July 2021. Doc. 31 ¶ 7; Doc. 50 ¶ 7. Seth Hughes is employed by the SDSP, and at all relevant times, was a Unit Manager. Doc. 31 ¶ 8; Doc. 39 ¶ 2; Doc. 50 ¶ 8. Christians alleges that Dreiske, in approximately June 2021, and Hughes, on April 29, 2021, each told him that that he would be transferred to a more dangerous out of state prison. Doc. 1 at 7; Doc. 50 ¶¶ 43, 45; Doc. 51 at 3–4. Dreiske and Hughes deny threatening to transfer Christians to a different facility. Doc. 36 ¶ 3; Doc. 39 ¶ 3. Christians did not file a grievance related to his allegations that Dreiske and Hughes threatened to transfer him to a different facility. Doc. 31 ¶¶ 44, 46; Doc. 50 ¶¶ 44, 46.

---

[6] Dreiske's name is misspelled in the caption. Doc. 29 at 1 n.2. In this Memorandum Opinion, the Court will refer to this defendant using the correct spelling of her last name.

### 2.    Eighth Amendment Excessive Force Claim

Christians' Eighth Amendment excessive force claim against Ekeren in his individual capacity and in his official capacity for injunctive relief only survived § 1915A screening. Doc. 5 at 13–14, 22. Derek Ekeren is a unit manager at the SDSP. Doc. 31 ¶ 6; Doc. 34 ¶ 2; Doc. 50 ¶ 6. In March 2021, Christians alleges that Ekeren choked him with both hands in Ekeren's office after he filed grievances, causing Christians to lose consciousness. Doc. 1 at 6; Doc. 51 at 2–3. Christians also alleges that Ekeren told him that he would kill him or have him killed if he tried to file another grievance. Doc. 1 at 7; Doc. 51 at 3. Ekeren denies choking or threatening to kill Christians. Doc. 34 ¶¶ 3, 4. Christians did not file a grievance related to his allegation Ekeren choked and threatened to kill him. Doc. 31 ¶ 42.

### 3.    Fourteenth Amendment Due Process Claims

Christians' Fourteenth Amendment due process claim for insufficient opportunity to be heard regarding his H-7 charge against Wynia and Pirraglia in their official capacities for injunctive relief only and his Fourteenth Amendment due process claim for insufficient evidence regarding his H-7 charge against Wynia in her individual capacity and in her official capacity for injunctive relief and against Pirraglia in her official capacity for injunctive relief only survived screening. Doc. 5 at 15–22. In April 2020, some inmates in the Jameson Annex of SDSP refused to eat scheduled meals and participated in a hunger strike to protest prison kitchen and food issues. Doc. 31 ¶ 9; Doc. 50 ¶ 9. Cathy Wynia, a Lieutenant with the Special Investigations Unit at the SDSP, investigated the April 2020 hunger strike. Doc. 31 ¶ 5; Doc. 40 ¶ 4; Doc. 50 ¶¶ 5, 9. Wynia interviewed inmates, spoke with prison staff, obtained information from confidential informants, and reviewed surveillance footage. Doc. 40 ¶ 4. During her investigation, Wynia learned from a confidential informant that the hunger strike grew out of a conversation between

8

Christians and another inmate. Doc. 31 ¶ 10. Christians contends that the confidential informant was not reliable or credible. Doc. 50 ¶ 10. Wynia interviewed Christians, and he denied organizing or planning the hunger strike. Doc. 31 ¶ 12; Doc. 40-1 at 5. At the end of the meeting, Christians contends that Wynia stated "well I don't think you had any involement [sic] with the planning of this hunger strike." Doc. 50 ¶ 12 (capitalization in original omitted); Doc. 51 at 1. Wynia found the information from the confidential informant to be credible and issued a disciplinary report charging Christians with an H-7 offense for "[e]ngaging in, or encouraging, a riot, work stoppage, group demonstration or group food/hunger strike[.]" Doc. 31 ¶¶ 11, 13; Doc. 40-1 at 5; Doc. 40-2.

On April 25, 2020, Christians was served with Wynia's disciplinary report charging him with an H-7 offense. Doc. 31 ¶ 14; Doc. 50 ¶ 14. The DOC's Offender Discipline System Policy provides that "[m]ajor offenses require a formal hearing." Doc. 49-1 at 22. This Policy, as well as the Offender Living Guide, which Defendants submitted in support of their motion for summary judgment, defines an H-7 offense as a major offense. *Id.*; Doc. 40-3 at 3–4 (categorizing an H-7 offense as a high-level violation). The Offender Discipline System Policy sets out the procedure for conducting disciplinary hearings. Doc. 49-1 at 27–29. If the disciplinary hearing officer determines that some evidence exists to support a finding that the offender is guilty of committing an offense in custody, the hearing officer may impose a sanction. *Id.* at 31. SDCL § 24-2-9 sets out available disciplinary sanctions. *See also* Doc. 49-1 at 31. Restrictive housing confinement for a maximum of fifteen days is one of the available sanctions. *Id.* The Offender Living Guide provides that "[y]our disciplinary history also effects your eligibility for release to parole supervision or suspended sentence status." Doc. 40-3 at 3; Doc. 50 ¶ 67.

9

No disciplinary hearing was conducted after Christians was charged with an H-7 offense. Defendants contend that Christians waived his right to a disciplinary hearing by pleading guilty to the H-7 offense. Doc. 31 ¶¶ 16, 17. Christians disputes that he waived his right to a disciplinary hearing and denied pleading guilty to the H-7 offense in exchange for fifteen days in disciplinary segregation. Doc. 51 at 1. Christians contends that he requested a disciplinary hearing, but Unit Manager Keith Ditmanson informed him that the H-7 charge was to be dismissed. Doc. 41-3 at 1. Defendants' submissions, according to Christians, do not support their contention that he pleaded guilty to the H-7 charge and accepted a sanction of fifteen days in disciplinary housing. Doc. 50 ¶¶ 15–17. The document Defendants submitted to establish that Christians pleaded guilty is dated May 4, 2020. Doc. 41-4. Christians did not sign the document; the document states "[i]nmate accepted offer/[u]nable to sign[.]" *Id.* The document does not contain a staff signature, although "Ditmanson" is typed on the staff signature line. *Id.* In response to Christians' grievance, his unit manager stated that he had his disciplinary hearing with Ditmanson on April 27, 2020, pleaded guilty, and remained on disciplinary status until May 4, 2020. Doc. 41-3 at 2. Christians argues that if he had pleaded guilty to the charge during a hearing with Ditmanson there is no reason that he and Ditmanson could not have signed the document at that time. Doc. 50 ¶ 16. Christians also argues that he was held in disciplinary segregation for less than twelve days, and there is no record evidence that his punishment was amended or reduced. *Id.*

On April 22, 2020, when Christians was moved to disciplinary housing, he weighed 240 pounds. Doc. 31 ¶ 22; Doc. 50 ¶ 22. When Christians was released from disciplinary housing on May 4, 2020, he weighed 235 pounds. Doc. 31 ¶¶ 23, 24; Doc. 50 ¶¶ 23, 24. Two months after

being released from disciplinary housing, Christians weighed 235 pounds. Doc. 31 ¶ 25; Doc. 50 ¶ 25.

**B.      Defendants' Motion to Seal**

This Court granted Defendants' motion to file under seal Exhibit A to the Affidavit of Cathy Wynia (Doc. 40-1) because it identifies confidential informants and other confidential information related to an investigation at the SDSP. *See* Docs. 42, 43. Defendants provided Christians with a redacted version of Exhibit A to the Affidavit of Cathy Wynia to provide some context and facts related to his claims without jeopardizing the safety of other inmates and SDSP staff. *See* Docs. 32, 32-1. Christians requests that the Court provide him with the identity of an inmate whose name was redacted from the investigatory report provided to Christians along with "all other unredacted information the Court deems appropriate for [him] to properly respond." Doc. 44 at 2 (capitalization in original omitted). Christians also requests that the Court authorize him to meet with and obtain a statement from, Lamont Hamilton, whom Christians suspects is one of the confidential informants referenced in the redacted disciplinary report. *Id.* Defendants oppose Christians' motion and requests that the Court enter a protective order under Federal Rule of Civil Procedure 26(c) barring the dissemination of any information within Doc. 40-1, which is under seal, beyond that contained in Doc. 32-1, the redacted version of Doc. 40-1 provided to Christians. Doc. 55.

The Court notes that Christians has responded to Defendants' motion for summary judgment, and his opposition papers do not allege that he cannot fully respond because he has not been provided an unredacted copy of Wynia's investigative report. *See* Docs. 48, 49, 50, 51, 52, 53, 53, 54. Notably, a declaration from Lamont Hamilton, Doc. 54, is one of the documents Christians filed in opposition to Defendants' motion for summary judgment. Here, Christians has

not demonstrated a substantial need for the identity of any confidential informant or other information redacted from Wynia's investigative report that outweighs the safety and security concerns identified by Defendants and recognized by the United States Court of Appeals for the Eighth Circuit. *See* Doc. 43; Doc. 55; Doc. 68 at 8–9; *see also Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004). Thus, Christians' motion for an unredacted exhibit, Doc. 44, is denied, and Defendants' motion for a protective order barring the dissemination of any information within Doc. 40-1, which is under seal, beyond that contained in Doc. 32-1, Doc. 55, is granted.

### C.    Summary Judgment Standard

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed. R. Civ. P. 56(c). The non-moving party is entitled to the benefit of having all reasonable inferences resolved in his or her favor, but the non-moving party must present specific facts showing a genuine issue for trial. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (citation omitted). That is, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in his or her favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)).

### D.    Administrative Exhaustion under the PLRA

Defendants argue that they are entitled to summary judgment on all of Christians' claims because he failed to properly exhaust his administrative remedies. Doc. 30 at 8–11. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal is mandatory if an inmate has not fully exhausted available administrative remedies at the time he files his complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). The United States Supreme Court has held that exhaustion of administrative remedies requires prisoners to complete the administrative review process in accordance with the applicable procedural rules as defined by the prison's grievance process, not the PLRA. *Jones v. Brock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* To properly exhaust his administrative remedies, Christians was "required to 'take advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process.'" *Whiting v. Eagle Bear*, 3:15-CV-03019-RAL, 2016 WL 297435, at *4 (D.S.D. Jan. 22, 2016) (quoting *Rothman v. Lombardi*, 2012 WL 639713, at *2 (E.D. Mo. Feb. 27, 2012)).

The DOC's Administrative Remedy Policy (1.3.E.2) outlines the process for exhausting administrative remedies. Doc. 41 ¶ 4; Doc. 41-2 at 1 ("The Administrative Remedy process provides a standard method by which all inmates . . . have access to a process to request resolution to issues or grievances."). [7] If an inmate is unable to resolve his complaint verbally, the inmate must submit a Request for Informal Resolution (IRR) form. Doc. 41 ¶ 5; Doc. 41-2 at

---

[7] The effective date of the Administrative Remedy policy Defendants submitted is March 3, 2021. Doc. 41-2 at 1. But most of Christians' allegations arise from incidents that occurred prior to March 3, 2021. Christians has submitted the Administrative Remedy policy (1.3.E.2) that became effective on April 4, 2019. Doc. 49-1 at 1–16. In light of the issues before the Court, there are no substantive differences between the two policies in the record.

3; Doc. 49-1 at 6. If the inmate is not satisfied with the response to the IRR, the inmate must submit a Request for Administrative Remedy (RAR) form. Doc. 41 ¶ 6; Doc. 41-2 at 4; Doc. 49-1 at 7. The administrative remedy policy includes a third step for grievances or issues involving certain subjects, including a "[d]isciplinary action/finding of guilt involving a high level Offense in Custody[.]" Doc. 41-2 at 6; *see also* Doc. 49-1 at 8–9. If an inmate is not satisfied with the response to a RAR regarding a disciplinary action, the inmate must appeal to the Secretary of Corrections. Doc. 41 ¶ 8; Doc. 41-2 at 6; Doc 49-1 at 8–9. The DOC maintains a record of an inmate's IRRs, RARs, appeals to the Secretary of Corrections, and responses to each. Doc. 41 ¶ 9. Between December 26, 2018, and January 4, 2024, Christians filed 111 IRRs, over 70 RARs, and 4 appeals to the Secretary of Corrections. *Id.* ¶ 11. But it is undisputed that Christians did not file a grievance reporting that Christensen and Stratman had threatened him between July 2019 and September 2019; alleging that Young or Cook had retaliated against him through the H-7 offense for filing grievances or a lawsuit; alleging that Ekeren choked and threatened to kill him in early March 2021; alleging that Ekeren threw away a job application instead of turning it in; alleging that Cook and Ekeren stated that they would make sure he never got a job at P.I. because he filed too many grievances; or alleging that Dreiske and Hughes threatened to transfer him to a different facility. Doc. 31 ¶¶ 34, 36, 38, 40, 42, 44, 46; Doc. 41 ¶¶ 14, 18; Doc. 50 ¶¶ 34, 36, 38, 40, 42, 44, 46.

Because failure to exhaust is an affirmative remedy, the burden to plead and prove failure to exhaust rests on the defendant. *Rinaldi v. United States*, 904 F.3d 257, 268 (3rd Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id.* (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253–

54 (10th Cir. 2011)). "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The United States Supreme Court has identified three circumstances that render administrative remedies unavailable. First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Second, an administrative procedure is unavailable if so confusing that "no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Intimidation, according to the Supreme Court, includes threats to "individual inmates so as to prevent their use of otherwise proper procedures." *Id.*

Christians raises various arguments why the administrative process was not available to him. *See* Doc. 49 at 6–13, 42–43; Doc. 50 ¶ 34. First, he argues DOC officials do not substantially comply with the administrative remedy policy. Second, he argues that despite submitting hundreds of grievances, he has obtained only partial relief two times. Finally, he argues that he feared retaliation if he filed grievances. In his complaint, Christians alleges only that he did not exhaust his administrative remedies because he "was threatened with many forms of violence and retaliation and was scared for [his] life." Doc. 1 at 6 (capitalization in original omitted).

Christians contends that he has submitted "literal[ly] hundreds of grievances," and "can think of only two approved for remedy." Doc. 50 ¶ 34 (capitalization in original omitted). According to Christians, the "grievance procedure operates as a simple dead end with officers consistently unwilling to provide any relief." Doc. 49 at 8 (cleaned up and capitalization in

15

original omitted). The United States Court of Appeal for the Eighth Circuit has recognized that an administrative remedy may be unavailable when the procedure "operates as a simple dead end" and is not "capable of use to obtain some relief for the action complained of." *Smith v. Andrews*, 75 F.4th 805, 808–09 (8th Cir. 2023) (quoting *Ross*, 578 U.S. at 642). Here, Christians' argument that no administrative remedy was "available" because of his low success rate of obtaining requested relief fails.

"[A] prisoner's administrative remedies are not unavailable simply because a prisoner has never happened to obtain relief; the prison's failure to afford relief to inmates must be 'systematic' such that a prisoner could never expect to obtain relief, no matter the circumstance." *Ford v. Jindal*, 2023 WL 6396581, at *5 (E.D. Mich. Sept. 30, 2023) (citing *Morgan v. Kentucky*, 2018 WL 715468, at *3 (W.D. Ky. Feb. 5, 2018)). Courts have further held that use of a grievance system and granting of prior administrative remedies shows that the prison was not systematically unwilling or unable to afford relief. *See Craig v. Kizziah*, 2019 WL 5790958, at *2 (E.D. Ky. Nov. 6, 2019) (citation omitted) (stating that "an inmate's repeated use of the [prison's] administrative remedy procedures demonstrates that the remedy process was not a dead end" and finding that prisoner's filing of thirteen administrative remedy requests or appeals with one request being granted in part demonstrated that administrative remedy process was not a dead end); *Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (holding that plaintiff had not shown constant unwillingness to grant relief when prisoner did not provide evidence of outcomes of past grievances and when several of prior grievances showed that they were accepted); *Gebhardt v. Larson*, 2022 WL 4138600, at *5 (E.D. Mich. Aug. 2, 2022) ("considering [prison] officials' detailed responses to [plaintiff's] grievances, and their occasional efforts to provide at least some relief, the fact that [plaintiff] filed six unsuccessful grievances, without more, is not enough for a

16

reasonable juror to conclude that prison officials were systemically unwilling or unable to afford any relief"); *Miller v. Annucci*, 2021 U.S. Dist. LEXIS 183372, at *42–45 (S.D.N.Y. Sept. 24, 2021) (holding that positive outcomes, even if not obtained through the grievance process itself, contradict claim that prison officials were consistently unwilling to provide relief). Here, Christians concedes that two of his grievances did, in fact, lead to the relief he requested. Doc. 50 ¶ 34. Further, Christians has submitted grievances and IRRs that demonstrate while he did not receive the specific remedy or relief he requested, he did receive some relief. *See* Doc. 49-1 at 54–55, 75–76, 83–84, 88–89, 104–112, 114–115, 120–121; *see also Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019) (recognizing that the relevant question is whether a prisoner has "'demonstrate[d] that no . . . potential exists' for *some* relief" (quoting *Ross*, 578 U.S. at 643) (second alteration and emphasis in original)).

In his responsive brief, Christians cites to numerous examples alleging that DOC staff do not follow the Administrative Remedy policy. Doc. 49 at 9–12. He also submitted examples of grievances to which he received no response or an untimely response. Doc. 49-1 at 60–103; *see also* Doc. 49 at 9. But none of these examples are grievances that relate to the conduct alleged in his complaint. Doc. 49-1 at 60–103. Christians does not allege and has provided no evidence that any DOC staff or official took any action that prevented him from filing a grievance for the conduct alleged in his complaint. For this reason, Christians' reliance on *McPeek v. Meyers*, 4:20-CV-04078-RAL, 2023 WL 2743999 (D.S.D. Mar. 31, 2023), is misplaced. *See* Doc. 49 at 9.

In *McPeek*, the Court recognized that "[i]nmates are excused from exhausting administrative remedies when prison officials prevent them from using the procedures or when the officials themselves fail to comply with the procedures." 2023 WL 2743999, at *14 (citing *Porter v. Strum*, 781 F.3d 448, 452 (8th Cir. 2015)). McPeek alleged that he completed and

17

submitted two IRRs complaining that construction near his cell was loud, causing him ear pain and a headache, but that he did not receive a response to his IRRs. *Id.* The Court concluded that "[i]f, as McPeek alleges, he submitted informal resolution forms complaining about the size of his cell, construction noise, and airborne construction debris, but prison staff did not respond, McPeek's failure to exhaust may be excused." *Id.* Because there was a question of fact whether McPeek's failure to exhaust may be excused, the Court denied the Defendants' motion for summary judgment on McPeek's claims arising out of the size of his cell, construction noise, and airborne construction debris for failure to exhaust administrative remedies. *Id.*

Christians provided an IRR dated November 22, 2019, alleging that Ekeren "more often than not" does not return IRRs that Christian submits or returns them "beyond the 10 day reply outlined in the policy." Doc. 49-1 at 60 (capitalization in original omitted). To create a question of fact whether he is excused from exhausting administrative remedies because prison officials have prevented him from using the procedure or themselves failed to comply with the procedure, Christians needed to provide evidence that he submitted an IRR to Ekeren or another prison official raising the issues alleged in his complaint and that the IRR was not returned or was returned late. He has not submitted any such evidence. Notably, Christians submitted documentation identifying specific IRRs, including the dates submitted, that he asserts were not officially documented or answered or responded to late, but none of these relate to the claims at issue here. Doc. 49-1 at 62, 146–53. If DOC officials failed to follow grievance procedures for the specific claims Defendants argue are unexhausted, it was incumbent upon Christians to provide supporting record evidence to support his argument that the administrative remedy process was unavailable to him. He has not done so.

18

In his declaration, Christians contends that Ekeren refused to provide him a grievance form when Christians alleged he sustained injury due to negligence of two transport officers because the incident was "not a grievable [sic] offense." Doc. 51 at 2 (capitalization in original omitted). In this action, Christians is not seeking to recover for injury due to alleged negligence of transport officers. *See generally* Doc. 1. Accordingly, Christians' allegation that Ekeren failed to provide him a grievance in this instance is not sufficient to create an issue of fact whether Ekeren or other prison officials failed to provide him a grievance form for any of the conduct alleged in the complaint.[8]

In his complaint, Christians alleges that he "was threatened with many forms of violence and retaliation and was scared for [his] life." Doc. 1 at 6 (capitalization in original omitted). Nevertheless, he alleges that he did "file grievances on the H-7 write up." *Id.* (capitalization in original omitted). Notably, the grievance on the H-7 write up is dated February 25, 2021, Doc. 41-3 at 1, which is after Stratman and Christensen allegedly threatened Christians for filing grievances, after then-Warden Young and then-Associate Warden Cook allegedly told him that he had been charged with the H-7 offense because he had been filing too many grievances, and after Ekeren had allegedly thrown away Christians' job application because Christians had filed grievances.

A generalized fear of retaliation, such as Christians alleges in his complaint, is not sufficient to excuse administrative exhaustion. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d

---

[8] As discussed *supra*, Christians contends that an unidentified lieutenant warned him that the retaliation would get worse when the lieutenant informed Christians that he had an option of submitting a formal grievance against Stratman and Christensen for their alleged threats in the summer of 2019. But Christians provides no evidence that the unidentified lieutenant refused to provide the necessary form to file a formal grievance. *See* Doc. 49 at 6–7; Doc. 50 ¶ 34; Doc. 51 at 7.

776, 794 (9th Cir. 2018). In his brief and supporting declaration, Christians argues that he feared retaliation if he submitted a grievance alleging that Stratman and Christensen had retaliated against him in the summer of 2019. Doc. 49 at 6–7; Doc. 51 at 2. Specifically, he alleges that he verbally reported Stratman's and Christensen's threats to an identified lieutenant at MDSP who replied that Christians' options were to file a formal grievance but warned that the retaliation would get worse or, as an alternative, just leave it alone. *See* Docs. 49 at 6–7; Doc. 50 ¶ 34; Doc. 51 at 2. Shortly after the unidentified lieutenant at MDSP allegedly warned that the retaliation would get worse if Christians filed a formal grievance against Stratman and Christensen, Christians filed other grievances against Stratman and Christensen. *See* Doc. 57-1 (IRR dated October 13, 2019 against Stratman and Christensen); Doc. 57-3 (IRR dated September 18, 2019 against Stratman); Doc. 57-12 (IRR dated July 2, 2019 against Stratman).

The Eighth Circuit has acknowledged that "circuits differ on the test to determine whether a fear of retaliation excuses an inmate from exhaustion requirements." *East v. Minnehaha Cnty.*, 986 F.3d 816, 821 (8th Cir. 2021) (citing cases). Many circuits require an inmate meet a two-part test to show that intimidation made the administrative remedy process unavailable. *East v. Minnehaha Cnty.*, 4:16-CV-04122-RAL, 2019 WL 1434974, at *22 (D.S.D. Mar. 29, 2019), *aff'd*, 986 F.3d 816 (8th Cir. 2021). First, the inmate must show that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance. *Id.* Second, the inmate must demonstrate that the threat actually did deter him. *Id.* Some circuits, however, apply only an objective standard. *See McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015). In *East,* the Eighth Circuit did not decide whether an inmate must demonstrate that the alleged threat actually deterred him from filing a grievance because the

plaintiff had failed to "show that a reasonable inmate of ordinary firmness would have failed to file a grievance in his situation." *East*, 986 F.3d at 821.

In this case, it is undisputed that from December 26, 2018, to November 5, 2023, Christians has filed 111 IRRs, 70 RARs, and 4 appeals to the Secretary of Corrections. Doc. 41 ¶ 11; Doc. 50 ¶ 34. In fact, Christians contends that it is likely that he has submitted additional grievances and argues that his frequent use of the administrative remedy process, with little success, renders the process "unavailable" to him. *See* Doc. 50 ¶ 34; Doc. 49 at 7–8. This argument is difficult to reconcile with Christians' assertion that fear of retaliation made the administrative process unavailable to him. Because of the specific, unique facts in this case, it is appropriate for the Court to consider whether Christians has demonstrated that alleged intimidation did in fact deter him from filing grievances. Shortly after the unidentified lieutenant at MDSP allegedly warned that the retaliation would get worse if Christians filed a formal grievance against Stratman and Christensen,[9] Christians filed other grievances against Stratman and Christensen. *See* Doc. 57-1 (IRR dated October 13, 2019 against Stratman and Christensen); Doc. 57-3 (IRR dated September 18, 2019 against Stratman); Doc. 57-12 (IRR dated July 2, 2019 against Stratman). He has also filed grievances against Defendants Ekeren, Hughes, and Cook. Doc. 57-9; Doc. 57-10; Doc. 57-11; Doc. 57-13. Christians has filed a grievance asserting

---

[9] In his responsive brief, Christians does not argue that the unidentified lieutenant's statement deterred him filing a grievance. Instead, he argues that the lieutenant's failure to document his "verbal request of resolution informally" sufficiently completes and exhausts his available remedies. Doc. 49 at 6–7 (capitalization in original omitted). Christians' argument cannot be reconciled with the Administrative Remedy Policy. Requests for informal resolution may be accomplished verbally if the inmate accepts the resolution offered by the staff member. If the inmate does not accept the resolution offered by the staff member, the inmate *must* submit a written request for informal resolution. Doc. 49-1 at 6.

that a DOC official, who is not a named defendant,[10] retaliated against him for filing grievances. Doc. 57-4. Finally, Christians has submitted a PREA complaint alleging that a prison official sexually assaulted him. Doc. 57-2; Doc. 58-1.[11]

Other courts have recognized that an inmate's continued use of the grievance process demonstrates that alleged threats of retaliation did not deter the inmate from exhausting available administrative remedies. *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018) ("Evidence that an inmate continued to file substantially similar claims through the same grievance process . . . may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence."); *Knutson v. Hamilton*, 2021 WL 4163981, at *5 (W.D. Va. Sept. 13, 2021) ("filing of other administrative remedies severely undermines any suggestion that any alleged threats <u>subjectively</u> deterred him"); *Smith v. Nancy*, 2019 WL 4194214, at *3 (M.D. Pa. Sept. 4, 2019) (holding that plaintiff did not meet his burden of demonstrating administrative remedies were not available due to alleged threats when the plaintiff filed grievances against prison officials who were not named as defendants); *Schwartz v. Dagiel*, 2018 WL 10812154, at *6 (D. Ariz. Mar. 26, 2018) (holding that continued filing of grievances precluded finding that plaintiff was actually deterred from utilizing the administrative remedy process); *Pool v. Klenz*, 2017 WL 1113359, at *4 (N.D. Ohio Mar. 24, 2017) (stating that an inmate's "extensive record"

---

[10] Although this official is not named as a defendant in this action, Christians has another lawsuit pending in which this official is a named defendant. *Christians v. Hanvey*, 04:23-CV-4137-LLP (D.S.D.).

[11] Defendants move to file Christians' PREA complaint and the DOC response under seal because the subject matter will potentially subject Christians to embarrassment. Doc. 58. Christians opposes Defendants' motion to seal. Doc. 72; Doc. 79 at 1. Because Christians opposes Defendants' motion to seal, Doc. 58, it is denied. But the Court denies Christians' alternative motion directing Defendants file a unredacted copy identifying the official who was the subject of Christians' PREA complaint. Given the limited purpose for which the document is being offered, the identity of the official is not relevant.

22

of grievances established that he was not afraid to file a grievance). Simply put, the record evidence in this case strongly contradicts Christians' assertion that he feared filing formal grievances because of alleged threats of retaliation. For these reasons, the Court concludes that Christians has failed to exhaust available remedies regarding his First Amendment retaliation claims against Christensen, Stratman, Cook, Wynia, Ekeren, Hughes, Young, and Dreiske and his Eighth Amendment excessive force claim against Ekeren. Thus, Defendants' motion for summary judgment on Christians' First Amendment retaliation claims and Eighth Amendment excessive force claim is granted, and these claims are dismissed without prejudice for failure to exhaust. *See Porter*, 781 F.3d at 452 (stating that "[d]ismissal without prejudice is mandatory" if a prisoner does not exhaust administrative remedies in accordance with the PLRA (citations omitted)).

Christians' complaint states that he "did file grievances on the H-7 write up." Doc. 1 at 6 (capitalization in original omitted). The record demonstrates that Christians submitted an IRR, dated February 25, 2021, requesting removal of the H-7 offense from 2020. Doc. 41-3 at 1. In the IRR, Christians states that after he was charged with an H-7 offense in April 2020, he "asked for a DHO hearing but was not granted one. Rather Unit Manager Ditmitson informed [him his] charge was to be dismissed." *Id.* (capitalization in original omitted). According to the IRR, Christians did not discover that the H-7 charge had not been removed from his record until shortly before he filed the IRR when he had inquired about a P.I. job. *Id.* In the response to Christians' IRR, a unit manager rejected Christians' IRR because "[t]here is no evidence to suggest that your report was to be dismissed." *Id.* at 2. According to the response, "[u]pon review of the facts, your writeup was conducted on 04/24/20, served on 04/25/20, and you had your Unit

Disciplinary Hearing with UM Ditmanson on 04/27/20. At the hearing, you pled guilty to your report, and remained on disciplinary status until 05/04/20." *Id.*

Christians then submitted a RAR requesting removal of the H-7 charge for two reasons. *Id.* at 3. First, Christians stated that Ditmanson informed him that the charge was to be dismissed. *Id.* Second, Christians contended that he had no involvement in the April 2020 food strike.[12] *Id.* Christians' RAR was rejected because the Administrative Remedy policy does not permit appeal of a disciplinary issue if the inmate pleads guilty. *Id.* at 5. Christians then submitted an appeal to the Secretary of Corrections. *Id.* at 6–7. Christians' appeal was rejected for two reasons. *Id.* at 8. First, according to the Secretary of Corrections, there was "no evidence to support your assertion the H-7 finding of guilt was to be dismissed[.]" *Id.* Second, the appeal was "well past the allowable time frame to appeal a disciplinary action that occurred in April 2020." *Id.*

Defendants contend that because the Secretary of Corrections rejected Christians' appeal due to untimeliness, the Court should dismiss his claim that he was denied an opportunity to be heard regarding the H-7 offense for failure to exhaust administrative remedies. *See* Doc. 30 at 10–11. Defendants do not acknowledge that the Secretary of Corrections also considered the merits of Christians' appeal. *See id.*; Doc. 41-3 at 8. Because the Secretary of Corrections denied Christians' appeal on the merits, he has fully exhausted his available remedies regarding his claim that he was denied hearing on the H-7 offense as well his claim that there was not sufficient evidence to support the H-7 charge. *See Hammett v. Cofield*, 681 F.3d. 945, 947 (8th Cir. 2012) (per curiam) (holding "that the PLRA's exhaustion requirement is satisfied if prison

---

[12] Although Christians contends that he had no involvement in the April 2020 food strike, he does not assert that Wynia falsified the H-7 charge in retaliation for filing grievances and a lawsuit. Doc. 41-3 at 3–4. Thus, as this Court has previously stated, Christians failed to properly exhaust his administrative remedies regarding his First Amendment retaliation claim against Wynia.

officials decide a procedurally flawed grievance on the merits"). Thus, the Court must consider the merits of these claims.

###### E.    Fourteenth Amendment Due Process Claims

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). To succeed on his procedural due process claim arising out of prison discipline for the H-7 charge, Christians must demonstrate that the prison action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Christians contends that he spent less than twelve days in disciplinary segregation related to the H-7 charge. Doc. 50 ¶ 16. Defendants have submitted documentation that Christians' sanction for the H-7 charge was fifteen days in disciplinary segregation. Doc. 41-4. Any factual dispute about the length of time Christians was in disciplinary segregation is not material. It is well established that "demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Smith*, 954 F.3d at 1082 (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)). "*Sandin* teaches that [an inmate] has no due process claim based on [a] somewhat more restrictive confinement because he has no protected liberty interest in remaining in the general prison population; his only liberty interest is not being subjected to 'atypical' conditions of confinement." *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996). An inmate "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Smith*, 954 F.3d at 1082 (quoting *Phillips*, 320 F.3d at 847).

In his complaint, Christians alleged that he "lost 21 pounds in 14 days when held in the SHU because [he] was not being brought complete meals by staff[.]" Doc. 1 at 8 (capitalization in original omitted). But he has not submitted any evidence that he was brought incomplete meals or lost twenty-one pounds. It is undisputed that he lost five pounds between April 22, 2020, and May 4, 2020, when was in disciplinary segregation related to the H-7 offense. Doc. 31 ¶¶ 22, 23, 24; Doc. 50 ¶¶ 22, 23, 24. Thus, the Court must decide whether loss of five pounds over the course of twelve days constitutes an atypical and significant hardship. *Smith*, 954 F.3d at 1080 ("The issue of whether conditions of confinement constitute an atypical and significant hardship is a question of law for the court to determine when the facts are undisputed."). The Court concludes that it is not.

Christians is six feet, two inches tall. Doc. 41-7 at 32. That his weight dropped from 240 to 235 pounds while in disciplinary segregation does not demonstrate nutritional differences sufficient to constitute an atypical and significant hardship, especially when it is undisputed that Christians' weight remained stable after his release from disciplinary segregation, and Christians did not submit any grievances complaining that the meals he was served while in disciplinary segregation were incomplete and inadequate. *See Barnes v. Prack*, 2012 WL 7761905, at *8 (N.D.N.Y. Sept. 7, 2012).

Christians alleges that he lost muscle mass while in disciplinary segregation, but he has not submitted any competent, probative evidence to support his assertion. Relying on an affidavit Dr. Mary Carpenter, who Christians states was the SDDOC Chief Medical Officer, submitted in a different case, Christians argues that loss of five pounds in twelve days is unsafe. Doc. 50 ¶ 24. Defendants correctly argue that it is not proper for Christians to request that this Court take judicial notice of an expert opinion in a collateral case to satisfy his evidentiary burden in this

case. *Murphy v. Kmart Corp.*, 07-CV-5080-JLV, 2010 WL 3703708, at *3 (D.S.D. Sept. 15, 2010). Further, Christians does the provide the context of Dr. Carpenter's statement, which is in a sealed document that Defendants in this case cannot access.

According to Defendants, Christians, for the first time in his opposition to Defendants' motion for summary judgment claims that the discipline he received for the H-7 offense affected his parole consideration and level of incarceration. Doc. 56 at 20. Defendants argue that these issues are not properly before the Court. *Id.* While Defendants are technically correct that Christians did not specifically mention these implications of an H-7 offense in his complaint, his complaint alleges that he has charged with an H-7 offense. Doc. 1 at 6. The DOC's Offender Discipline System Policy and Offender Living Guide are the basis of the alleged new allegations. Thus, Defendants cannot claim they were surprised by these allegations. Further, Defendants addressed the allegations in their reply brief. Doc.56 at 21–23.

Christians argues that he was confined at the Jameson Annex of the SDSP instead of being transferred to MDSP, a lower-security facility, because of his H-7 offense, but he has not submitted any evidence to support this assertion. *See* Doc. 49 at 17–21. To the contrary, Christians' records demonstrate that there are a number of reasons that he was not considered for an earlier transfer to a lower-security facility, including the nature of his crime, his classification level as a sex offender, and several disciplinary charges.[13] Doc. 57 ¶ 48, Doc. 57-14.

But even if Christians could establish that the only reason he remained housed at Jameson Annex at the SDSP is his H-7 charge, the Constitution does not give rise to a liberty interest in avoiding transfer to a maximum-security prison because "[c]onfinement in any of the State's institutions in within the normal limits or range of custody which the conviction has authorized

---

[13] Christians was transferred to MDSP, a lower-security facility, in late 2024. Doc. 88.

the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) ("Although Anamosa was a higher-security institution and presented a more restrictive environment than NCCF, there is no liberty interest in assignment to any particular prison."). In *Wilkinson*, the United States Supreme Court held that because of specific conditions at Ohio's "Supermax" facility, inmates have a liberty interest in avoiding assignment to the facility because it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 545 U.S. at 223 (quoting *Sandin,* 515 U.S. at 484). Christians' attempt to equate Jameson Annex to the "Supermax" facility at issue in *Wilkinson* is misplaced.

In *Wilkinson*, the Supreme Court explained:

> For an inmate placed in OSP [Ohio State Penitentiary], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, by only in a small indoor room. . . . here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP.

*Id.* at 223–24 (internal citations omitted). Based on Christians' description, he has established that the conditions at MDSP are less restrictive than the conditions at Jameson Annex, but he has not provided any evidence that the conditions at Jameson Annex are comparable to the "Supermax" facility at OSP. Thus, he has no liberty interest in avoiding housing at Jameson Annex.

Christians argues, but has not submitted any evidence, that his parole consideration was affected by his H-7 charge. Effective February 6, 2019, there was a hold on his parole

consideration based on his status with the DOC's sex offender program. Doc. 41-1 at 2. Additionally, Christians is serving an 80-year term of imprisonment, and his initial parole date is January 5, 2072. *Id.* The Offender Living Guide provides that "disciplinary history . . . effects . . . eligibility for release to parole supervision or suspended sentence status." Doc. 40-3 at 3. To the extent the 2020 H-7 offense may affect Christians' chances of parole, just as in *Sandin*, the affect is too attenuated to implicate due process rights. 515 U.S. at 487. Christians' disciplinary record is only one of many factors that the parole board will consider in determining whether Christians has substantively met the requirements for parole release at his initial parole date. SDCL § 24-15A-42.

Because Christians has not demonstrated that his post-discipline conditions of confinement constituted an atypical and significant hardship such that he had a liberty interest in avoiding them, Defendants are entitled to summary judgment on Christians' Fourteenth Amendment due process claim for insufficient opportunity to be heard[14] and insufficient evidence regarding his H-7 offense.[15]

---

[14] Whether Christians requested a disciplinary hearing is disputed, but this factual dispute is not material because Christians has not established that he has a liberty interest in avoiding up to 15 days in disciplinary segregation, which is the maximum sanction for an H-7 offense. *See Sandin*, 515 U.S. at 486 (holding that 30 days in segregated confinement does not present the type of atypical, significant deprivation that might give rise to a liberty interest); *see also Phillips*, 320 F.3d at 847 (refusing to consider denial of a hearing when determining whether an inmate possesses a liberty interest and stating "[w]e do not consider the procedures used to confine the inmate in segregation." (internal citation omitted)).

[15] Based on the record evidence, the Court concludes that Christians' claim against Wynia regarding the H-7 offense is more properly characterized as a claim for filing of a false disciplinary charge, which is not actionable under § 1983. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Although Wynia charged Christians with the offense, there is no evidence that she was involved in disciplining Christians for the offense. *See* Doc. 41-4. Thus, Wynia is entitled to summary judgment on Christians' Fourteenth Amended due process claim for insufficient evidence for this reason as well.

### III.    Christians' Miscellaneous Motions (Docs. 59/65, 60/66, 69, 70, 73)

After Christians responded to Defendants' motion for summary judgment, he filed two motions to re-open discovery, Docs. 59,[16] 69, and a motion to stay ruling on Defendants' motion for summary judgment, Doc. 60.[17] Defendants oppose Christians' motions. Docs. 68, 77. Christians seeks to discover the disciplinary records of other inmates who were also charged with an H-7 offense related to the April 2020 food strike to demonstrate that confidential informant information is not reliable. Doc. 59. He also seeks to conduct discovery regarding Defendants' argument that he must prove a policy or custom to succeed on his official capacity claims for injunctive relief. Doc. 69. Because Christians has not demonstrated that he has a liberty interest is avoiding disciplinary segregation related to the H-7 offense, whether the confidential informant information is reliable is not relevant. For the same reason, the Court need not consider whether Christians is entitled to injunctive relief on his Fourteenth Amendment due process claims. Because Christians failed to exhaust available administrative remedies on his remaining claims, the Court need not consider whether he is entitled to injunctive relief on those claims. Accordingly, Christians' motions to re-open discovery, Docs. 59, 65, 69, and his motion to stay ruling on Defendants' motion for summary judgement, Docs. 60, 66, are denied.

Christians moves for permission to file a surreply to address new arguments and evidence he contends that Defendants raised for the first time in their reply brief. Doc. 70. Alternatively, he moves to strike the allegedly improper new arguments and evidence in Defendants' reply brief. Doc. 73. Defendants oppose Christians' motions. Doc. 77. Although Defendants made

---

[16] Christians filed this motion to re-open discovery twice. Docket 59 and Docket 65 are identical.

[17] Christians filed the motion to stay ruling on Defendants' motion for summary judgment twice. Docket 60 is identical to Docket 66.

arguments and presented evidence in support of those arguments that was not submitted along with their motion for summary judgment, Defendants' "new" arguments and evidence refuted the arguments Christians raised in his responsive papers. Thus, Christians' motion to strike, Doc. 73, is denied. The Federal Rules of Civil Procedure and the District of South Dakota's local rules do not authorize surreply briefs as a matter of right. D.S.D. Civ. LR 7.1; *Counts v. Wasko*, 4:23-CV-04103-KES, 2024 WL 4068651, at *3 (D.S.D. Sept. 5, 2024). A party, including pro se litigants, must generally seek leave for permission to file a surreply. *Id.* (citations omitted); *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005).

Christians filed a surreply prior to obtaining leave of Court. Doc. 71. Although Defendants' reply brief does not raise any arguments for which an opportunity to respond is needed, Defendants do not argue that they will be prejudiced if the Court grants Christians' motion for leave to file a surreply brief and considers the surreply brief. Thus, Christians' motion for leave to file a surreply, Doc. 70, is granted.

## IV.    Motion to Add Next of Kin as a Plaintiff (Doc. 80)

Christians moves to add his niece, his next of kin, as a plaintiff to this lawsuit because he is concerned for his life due to past threats and improper diet. Doc. 80.[18] Under Federal Rule of Civil Procedure 25(a)(1), "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Because Christians is alive and actively prosecuting his case, this Court need not add as a plaintiff a next of kin at this time. If the event of death of any

---

[18] Christians' motion was filed on August 19, 2024, well after the expiration of the deadline to move to join additional parties. *See* Doc. 23 ¶ 1. Thus, the motion is also denied as untimely.

party, this Court and the parties shall act in accordance with Federal Rule of Civil Procedure 25.

Thus, Christians' motion to add next of kin as a plaintiff, Doc. 80, is denied.

## V.    Motions for Preliminary Injunctive Relief (Docs. 81, 90)

After Defendants' motion for summary judgment was fully briefed, Christians filed two

requests for preliminary injunctive relief. First, Christians moves for a preliminary injunction to

allow access to courts. Doc. 81. He alleges that DOC officials confiscated ink pens he uses to

prepare legal documents and requests that the Court order "immediate return of the eight

confiscated pens and continued supply of a <u>stick</u> pen for document prep as opposed to flex." *Id.*

at 1 (capitalization in original omitted). Defendants oppose Christians' motion for access to

courts. Docs. 83, 84. Second, Christians moves for an order permitting him to use a thumb drive

to save and preserve his legal materials and to have the thumb drive in his possession at all times.

Doc. 90. Christians asserts that "there is no penological reason to deny a USB for legal work

other than the bare assertion they can be used inappropriately." Doc. 94 at 5 (capitalization in

original omitted). He also asserts that the DOC's policy violates his right to access the courts.

Doc. 90 at 1. Christians also contends that Defendants have stolen, lost, or misplaced his legal

documents. *Id.* at 2. Defendants oppose Christians' request to use a thumb drive to save and

preserve his legal work. Docs. 91, 92.[19]

In this case, Christians has not asserted a claim alleging a violation of his First

Amendment right to access the courts. *See* Doc. 1. Because Christians' complaint does not

---

[19] Defendants correctly note that Christians does not provide any supporting evidence or details substantiating his allegation that Defendants lost, stole, or misplaced any specific legal materials. *See* Doc. 91 at 5. Despite Christians' "failure to carry the burden to support his motion," Defendants provided Christians a USB drive with all the filings in this case to use in compliance with DOC policy and waived any otherwise applicable printing fees if Christians requests that any of the documents on the USB drive be printed. *Id.* at 8; Doc. 92 ¶ 8.

include a First Amendment access to the courts claim, this Court cannot enter a preliminary injunction or order any other type of relief unrelated to the claims at issue in this lawsuit. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). Accordingly, Christians' motion for preliminary injunction to allow access to the courts, Doc. 81, and his motion for retention of legal materials, Doc. 90, are denied. *See Brakeall v. Stanwick-Klemik*, 4:17-CV-04101-LLP, 2019 WL 3713721, at *2 (D.S.D. Aug. 7, 2019) ("A plaintiff may not obtain a preliminary injunction based on new assertions of mistreatment that are entirely different from the claims raised and the relief requested' in the underlying complaint." (internal quotation and citation omitted)).

Accordingly, it is ORDERED:

1. That Christians' motion to amend the screening order to keep Eighth Amendment violation claims against Christensen and Young, Doc. 26, is denied.

2. That Defendants' motion to seal Exhibit L to the supplemental affidavit of Addyson Aguirre (Doc. 58) is denied. Christians' motion for an order directing Defendants to file an unredacted copy of Exhibit L to the supplemental affidavit of Addyson Aguirre (Doc. 79 at 1) is denied.

3. That Christians' motion for an unredacted exhibit, Doc. 44, is denied, and Defendants' motion for a protective order barring the dissemination of any information within Doc. 40-1, which is under seal, beyond that contained in Doc. 32-1, Doc. 55, is granted.

4. That Defendants' motion for summary judgment, Doc. 29, is granted.

5.      That Christians' motions to re-open discovery, Docs. 59, 65, 69, and his motion to stay ruling on Defendants' motion for summary judgment, Docs. 60, 66, are denied.

6.      That Christians' motion for leave to file a surreply, Doc. 70, is granted.

7.      That Christians' motion to strike, Doc. 73, is denied.

8.      That Christians' motion to add next of kin as a plaintiff, Doc. 80, is denied.

9.      That Christians' motion for preliminary injunction to allow access to the courts, Doc. 81, and motion for retention of legal materials, Doc. 90, are denied.

DATED this 27th day of March, 2025.

BY THE COURT:

LAWRENCE L. PIERSOL
United States District Judge